UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KEITH LAMONT NETTLES,

          Petitioner,          Case No. 1:21-cv-997

v.                                   Hon. Hala Y. Jarbou

NEWAYGO COUNTY JAIL,

          Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a federal prisoner under 28 U.S.C. § 2241. A court must promptly order an answer or grant the writ under § 2241, "unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. After undertaking the review required by § 2243, the Court concludes that the petition is properly dismissed because Petitioner must exhaust his claims in the criminal proceedings.

### Discussion

**I.    Background**

Petitioner is presently housed in the Newaygo County Jail pending a final bond revocation hearing in *United States v. Nettles*, No. 1:21-cv-29 (W.D. Mich.) (*Nettles I*), and a detention hearing in *United States v. Nettles*, No. 1:21-cv-183 (W.D. Mich.) (*Nettles II*). Petitioner is indicted on drug and gun charges in *Nettles I*. By order entered March 30, 2021, Petitioner was released on bond subject to certain conditions. *Nettles I* (ECF No. 24.) Petitioner entered a guilty plea and was scheduled for sentencing on September 8, 2021. On June 29, 2021, Petitioner left

his approved placement without permission. As of that date, Petitioner's whereabouts were unknown. *Nettles I* (Pet., ECF No. 53.)

In *Nettles II*, Petitioner was indicted on a charge of felony escape for leaving the approved placement without permission. Petitioner was eventually located in a county detention center in Greenville, South Carolina. This Court issued a writ of habeas corpus *ad prosequendum* to secure Petitioner's return to this district. Petitioner was recently returned here.

Petitioner reports that he was arrested by police in South Carolina on September 8, 2021. (Pet., ECF No. 1, PageID.6.) He notes that South Carolina has lodged state charges against him that remain pending. (*Id*.)

Petitioner contends that he was denied an extradition hearing under South Carolina law and, therefore, that his custody in the Newaygo County Jail violates his constitutional rights. He asks the Court to order his immediate release and to return him to South Carolina.

## II.     Analysis

A habeas petition under 28 U.S.C. § 2254 requires entry of judgment before relief is available. A motion to vacate sentence under 28 U.S.C. § 2255 similarly requires that a prisoner be "in custody under sentence of a court" before relief is available. Neither of those statutes permits relief to a pretrial detainee or a person detained pending sentence. Where a pretrial detainee challenges the constitutionality of his or her pretrial—or prejudgment—detention, he or she must pursue relief under 28 U.S.C. § 2241. *Atkins v. Michigan*, 644 F.2d 543, 546 n.1 (6th Cir. 1981). Petitioner seeks relief under that statutory section.

Regular federal criminal proceedings, not habeas corpus proceedings, are the proper place to resolve the sort of challenges that Petitioner raises in his petition. In *Johnson v. Hoy*, 227 U.S. 245 (1913), the Supreme Court rejected a habeas petition by a pretrial detainee

2

objecting to excessive bail and claiming that the statute under which he had been indicted was unconstitutional, stating:

> The writ of habeas corpus is not intended to serve the office of a writ of error even after verdict; and, for still stronger reasons, it is not available to a defendant before trial, except in rare and exceptional cases . . . . [The petition] is an effort to nullify that rule, and to depart from the regular course of criminal proceedings by securing from this court, in advance, a decision on an issue of law which the defendant can raise in the district court, with the right, if convicted, to a writ of error on any ruling adverse to his contention. That the orderly course of a trial must be pursued and the usual remedies exhausted, even where the petitioner attacks on habeas corpus the constitutionality of the statute under which he was indicted, was decided in *Glasgow v. Moyer*, 225 U.S. 420 (1912). That and other similar decisions have so definitely established the general principle as to leave no room for further discussion. *Riggins v. United States*, 199 U. S. 547 (1905).

*Johnson*, 227 U.S. at 247.

In *Medina v. Choate*, 875 F.3d 1025 (10th Cir. 2017), the Tenth Circuit Court of Appeals collected the "remarkably few" published appellate opinions on the matter in the past century:

> In 1948 the D.C. Circuit declared that "the hearing on habeas corpus is not intended as a substitute for the functions of a trial court." *Pelley v. Botkin*, 152 F.2d 12, 13 (D.C. Cir. 1945) (refusing to hear pretrial habeas challenge to constitutionality of statute). More recently, two circuit courts have criticized use of § 2241 to challenge pretrial detention orders rather than proceeding under 18 U.S.C. § 3145. *See United States v. Pipito*, 861 F.2d 1006, 1009 (7th Cir. 1987) (affirming district court's refusal to entertain § 2241 petition); *Fassler v. United States*, 858 F.2d 1016, 1017–18 (5th Cir. 1988) (prisoner ordinarily should proceed under § 3145). The Seventh Circuit was more definitive in an unpublished opinion, declaring, "[A] federal pretrial detainee cannot use § 2241 to preempt the judge presiding over the criminal case." *Williams v. Hackman*, 364 F. App'x 268, 268 (7th Cir. 2010). Unpublished opinions in this circuit have taken the same view. As we explained in one of those opinions:
>
>> To be eligible for habeas relief under § 2241, a federal pretrial detainee generally must exhaust other available remedies. The reasons for this requirement are rooted not in comity (as is the case with state prisoners), but in concerns for judicial economy. Allowing federal prisoners to bring claims in habeas proceedings that they have not yet, but still could, bring in the trial court, would result in needless duplication of judicial work and would encourage "judge shopping."

3

> *Hall v. Pratt*, 97 F. App'x 246, 247–48 (10th Cir. 2004) (citations omitted*); accord Chandler v. Pratt*, 96 F. App'x 661, 662 (10th Cir. 2004) ("To allow petitioner to bring the same claims before another judge in a collateral proceeding would not only waste judicial resources, but would encourage judge shopping."); *Thompson v. Robinson*, 565 F. App'x 738, 739 (10th Cir. 2014); *Ray v. Denham*, 626 F. App'x 218, 219 (10th Cir. 2015). Although the earlier cases did not speak in terms of exhaustion of remedies in federal court, as we have in our unpublished decisions, the term conveys the heart of the matter—that the prisoner is limited to proceeding by motion to the trial court, followed by a possible appeal after judgment, before resorting to habeas relief. *See* 17B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4261 (3d ed. 2007) ("The requirement of exhaustion of remedies ordinarily will preclude the use of [§ 2241] before trial.").

*Medina*, 875 F.2d at 1028–29.

The *Medina* court did not end its analysis with the declaration that exhaustion is required. The court continued:

> But this is not to say that federal prisoners can pursue relief under § 2241 after these avenues have been exhausted. If a federal prisoner is ever entitled to relief under § 2241 based on something that happened before trial, the circumstances are so rare that they have apparently not yet arisen.

*Medina*, 875 F.3d at 1029. Although such circumstances might exist for state detainees, *see, e.g.*, *Ex parte Royall*, 117 U.S. 241 (1886); *Thomas v. Loney*, 134 U.S. 372 (1890); *Justices of Boston Mun. Ct. v. Lydon*, 466 U.S. 294 (1984), there do not appear to be any cases identifying the presence of such circumstances for federal pretrial detainees.

After *Medina*, the Third Circuit Court of Appeals addressed the claim of a pretrial detainee challenging his continued detention. *Reese v. Warden Philadelphia FDC*, 904 F.3d 244 (3rd Cir. 2018). The Third Circuit also concluded that "Section 2241 is . . . not the proper vehicle for Reese to challenge his detention pending trial. The Bail Reform Act of 1984 . . . provides a comprehensive scheme governing pretrial-release decisions. . . . [F]ederal defendants who seek pretrial release should do so through the means authorized by the Bail Reform Act, not through a separate § 2241 action." *Reese*, 904 F.3d at 247. Additional circuit courts of appeals have since

4

echoed that conclusion.  *See Frederickson v. Terrill*, 957 F.3d 1379, 1380 (7th Cir. 2020); *Ramirez v. Warden*, No. 21-11397, 2021 WL 5353066, at *1 (11th Cir. Nov. 17, 2021).

The authorities cited in *Medina* and the additional circuit authority issued after *Medina* indicate, at a minimum, that Petitioner must exhaust his challenges in his criminal proceedings.  Petitioner has not so exhausted his claim.  Petitioner's failure to exhaust warrants dismissal of his petition without prejudice.

Although the Court declines to address the merits of Petitioner's arguments in this proceeding, the Court notes that his entire argument is based on the faulty premise that he was entitled to a hearing in South Carolina before he was transferred here.  Petitioner contends that the South Carolina extradition statute entitles him to that hearing.  The Supreme Court considered a similar question in *Cuyler v. Adams*, 449 U.S. 433 (1981).  The *Cuyler* Court considered whether a prisoner incarcerated in a jurisdiction that adopted the Uniform Criminal Extradition Act[1] (UCEA) is entitled to the procedural protections of that Act, including the right to a pretransfer hearing, before being transferred to another jurisdiction pursuant to the Interstate Agreement on Detainers[2] (IAD).  *Id*. at 435.  The Court concluded that the UCEA right to a pre-transfer hearing was preserved by and through the IAD.  *Id*. at 449.

---

[1] "The Uniform Criminal Extradition Act . . . has been adopted by 48 States, Puerto Rico, and the Virgin Islands. Initially drafted in 1926 and revised 10 years later, the Extradition Act, like the Detainer Agreement, establishes procedures for the interstate transfer of persons against whom criminal charges are outstanding." *Cuyler*, 449 U.S. at 435 n.1.  South Carolina has not adopted the UCEA, but the provisions of South Carolina's extradition statute, though they are significantly less detailed, generally parallel those of the UCEA.  *Compare* the UCEA as adopted in Michigan, Mich. Comp. Laws § 780.1 *et seq*., and S.C. Code §§ 17-9-10 through 17-9-70.  The United States has not adopted the UCEA.

[2] "The Interstate Agreement on Detainers . . . is a compact among 48 States, the District of Columbia, and the United States.  Initially drafted by the Council of State Governments in 1956 and included in the Council's Suggested State Legislation Program for 1957, the Agreement establishes procedures by which one jurisdiction may obtain temporary custody of a prisoner incarcerated in another jurisdiction for the purpose of bringing that prisoner to trial.  Unlike the Extradition Act, the Detainer Agreement establishes procedures under which a prisoner may initiate his transfer to the receiving State and procedures that ensure protection of the prisoner's speedy trial rights." *Cuyler*, 449 U.S. at 435 n.1.  South Carolina and the United States have adopted the terms of the IAD.

The decision in *Cuyler* does not afford Petitioner any ground for relief for several reasons. First, the United States has not adopted and is not bound by the UCEA or the provisions regarding a pre-transfer hearing. In *Martin v. Pittman*, 244 F. App'x 567 (5th Cir. 2007), the Fifth Circuit Court of Appeals explained:

> By its express terms, the UCEA—including the version adopted by Texas—applies only to transfers between the several states, e.g., Pennsylvania to New Jersey in *Cuyler*. Unlike the IADA, the UCEA's definition of "State" does not include the federal government. Thus, the UCEA facially has no application to transfers involving the federal government as either the sending State or the receiving State. As the UCEA is not applicable to transfers involving the federal government, there are here no UCEA pre-transfer hearing rights to be incorporated by the IADA. Martin thus had no right to a pre-transfer hearing. As such, he has failed to raise a cognizable constitutional violation.

*Martin*, 244 F. App'x at 602 (footnote omitted); *see also Wilson v. Fenton*, 684 F.2d 249, 252 (3rd Cir. 1982) ("[T]he United States is not a party to the Uniform Criminal Extradition Act, so that whatever protections are accorded under that Act could not be applied to Wilson . . . .") (footnote omitted); *Mann v. Warden of Eglin Air Force Base*, 771 F.2d 1453, 1454 (11th Cir. 1985) ("Mann receives no protection under . . . the Extradition Act since the United States has not adopted [it].").

Second, even if the United States were included as a "state" under the UCEA, the UCEA has no application in South Carolina. *See, e.g., DuBose v. Evans*, No. 07-CV-13128, 2008 WL 2622951, at *4 n. 7 (E.D. Mich. Apr. 9, 2008) ("South Carolina is one of the two states that has not adopted the UCEA along with Mississippi.").

Third, the provisions of South Carolina's extradition act do not require a pre-transfer hearing. *Ray v. Simon*, No. 4:07-1143-TLW-TER, 2008 WL 5412067, at *13 (D.S.C. Dec. 24, 2008) ("While South Carolina has adopted the IAD Act, which as stated above does not require a transfer hearing, it has not adopted the UCEA. 13 S.C.Code Ann. §§ 17–9–10 through –70 sets out the extradition procedures applicable in South Carolina and a pre-transfer hearing is not required.") (footnote omitted).

Fourth, neither the provisions of the South Carolina extradition statute nor the IAD apply because Petitioner was not transferred pursuant to either act; he was transferred pursuant to a writ of habeas corpus *ad prosequendum*. When the United States obtains a state prisoner by means of a writ of habeas corpus *ad prosequendum*—and does not also file a detainer—the provisions of the IAD simply do not apply. *United States v. Mauro*, 436 U.S. 340 (1978). And as the First Circuit Court of Appeals explained in *United States v. Pleau*, 680 F.3d 1 (1st Cir. 2012), a federal writ of habeas corpus *ad prosequendum* takes precedence over state law:

> That "a state has never had authority to dishonor an *ad prosequendum* writ issued by a federal court" is patent. Under the Supremacy Clause, U.S. Const. art. VI, cl. 2, the habeas statute—like any other valid federal measure—overrides any contrary position or preference of the state, a principle regularly and famously reaffirmed in civil rights cases, *e.g., Cooper v. Aaron*, 358 U.S. 1, 18–19 (1958); *United States v. Barnett*, 376 U.S. 681 (1964), as in many other contexts, *e.g., Washington v. Wash. State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 695–96 (1979). State interposition to defeat federal authority vanished with the Civil War.

*Pleau*, 680 F.3d at 6.[3] Thus, South Carolina's extradition statute could not limit the operation of the federal writ in Petitioner's case.

## Conclusion

The Court will enter a judgment dismissing the petition without prejudice. In § 2241 cases, the Court need not address whether to grant a certificate of appealability. *Witham v. United States*, 355 F.3d 501 (6th Cir. 2004).

Dated: December 2, 2021     /s/ Hala Y. Jarbou
HALA Y. JARBOU
UNITED STATES DISTRICT JUDGE

---

[3] Indeed, the writ of habeas corpus *ad prosequendum* is not subject to any territorial limitation. *See Carbo v. United States*, 364 U.S. 611 (1961). The First Circuit Court of Appeals observed that apparently "no state has ever refused to honor the writ [such that] the Supreme Court has found it unnecessary to decide whether the Supremacy Clause requires the states' obedience." *United States v. Kenaan*, 557 F.2d 912, 916 n.8 (1st Cir. 1977).