UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KEITH LAMONT NETTLES,

                    Petitioner,                    Case No. 1:21-cv-997

v.                                                 Hon. Hala Y. Jarbou

NEWAYGO COUNTY JAIL,

                    Respondent.
_____/

## AMENDED OPINION

               This is a habeas corpus action brought by a federal prisoner under 28 U.S.C. § 2241.

A court must promptly order an answer or grant the writ under § 2241, "unless it appears from the

application that the applicant or person detained is not entitled thereto."  28 U.S.C. § 2243.  After

undertaking the review required by § 2243, the Court concludes that the petition is properly

dismissed with prejudice because Petitioner's claim lacks merit.

## Discussion

### I.       Background

               Petitioner is presently housed in the Newaygo County Jail.  His bond was revoked

in *United States v. Nettles*, No. 1:21-cv-29 (W.D. Mich.) (*Nettles I*) (ECF No. 61), and he was

ordered detained in *United States v. Nettles*, No. 1:21-cv-183 (W.D. Mich.) (*Nettles II*) (ECF No.

11).

               Petitioner is indicted on drug and gun charges in *Nettles I*.  By order entered March

30, 2021, Petitioner was released on bond subject to certain conditions.  *Nettles I* (ECF No. 24.)

Petitioner entered a guilty plea and was scheduled for sentencing on September 8, 2021.  On June

29, 2021, Petitioner left his approved placement without permission. As of that date, Petitioner's whereabouts were unknown. *Nettles I* (Pet., ECF No. 53.)

In *Nettles II*, Petitioner was indicted on a charge of felony escape for leaving the approved placement without permission. Petitioner was eventually located in a county detention center in Greenville, South Carolina. This Court issued a writ of habeas corpus *ad prosequendum* to secure Petitioner's return to this district. Petitioner was recently returned here.

Petitioner reports that he was arrested by police in South Carolina on September 8, 2021. (Pet., ECF No. 1, PageID.6.) He notes that South Carolina has lodged state charges against him that remain pending. (*Id.*)

Petitioner contends that he was denied an extradition hearing under South Carolina law and, therefore, that his custody in the Newaygo County Jail violates his constitutional rights. He asks the Court to order his immediate release and to return him to South Carolina.

## II.    Analysis

A habeas petition under 28 U.S.C. § 2254 requires entry of judgment before relief is available. A motion to vacate sentence under 28 U.S.C. § 2255 similarly requires that a prisoner be "in custody under sentence of a court" before relief is available. Neither of those statutes permits relief to a pretrial detainee or a person detained pending sentence. Where a pretrial detainee challenges the constitutionality of his or her pretrial—or prejudgment—detention, he or she must pursue relief under 28 U.S.C. § 2241. *Atkins v. Michigan*, 644 F.2d 543, 546 n.1 (6th Cir. 1981). Petitioner seeks relief under that statutory section.

Regular federal criminal proceedings, not habeas corpus proceedings, are the proper place to resolve the sort of challenges that Petitioner raises in his petition. In *Johnson v. Hoy*, 227 U.S. 245 (1913), the Supreme Court rejected a habeas petition by a pretrial detainee

objecting to excessive bail and claiming that the statute under which he had been indicted was

unconstitutional, stating:

> The writ of habeas corpus is not intended to serve the office of a writ of error even
> after verdict; and, for still stronger reasons, it is not available to a defendant before
> trial, except in rare and exceptional cases . . . . [The petition] is an effort to nullify
> that rule, and to depart from the regular course of criminal proceedings by securing
> from this court, in advance, a decision on an issue of law which the defendant can
> raise in the district court, with the right, if convicted, to a writ of error on any ruling
> adverse to his contention. That the orderly course of a trial must be pursued and
> the usual remedies exhausted, even where the petitioner attacks on habeas corpus
> the constitutionality of the statute under which he was indicted, was decided in
> *Glasgow v. Moyer*, 225 U.S. 420 (1912). That and other similar decisions have so
> definitely established the general principle as to leave no room for further
> discussion. *Riggins v. United States*, 199 U. S. 547 (1905).

*Johnson*, 227 U.S. at 247.

In *Medina v. Choate*, 875 F.3d 1025 (10th Cir. 2017), the Tenth Circuit Court of

Appeals collected the "remarkably few" published appellate opinions on the matter in the past

century:

> In 1948 the D.C. Circuit declared that "the hearing on habeas corpus is not intended
> as a substitute for the functions of a trial court." *Pelley v. Botkin*, 152 F.2d 12, 13
> (D.C. Cir. 1945) (refusing to hear pretrial habeas challenge to constitutionality of
> statute). More recently, two circuit courts have criticized use of § 2241 to challenge
> pretrial detention orders rather than proceeding under 18 U.S.C. § 3145. *See United
> States v. Pipito*, 861 F.2d 1006, 1009 (7th Cir. 1987) (affirming district court's
> refusal to entertain § 2241 petition); *Fassler v. United States*, 858 F.2d 1016, 1017–
> 18 (5th Cir. 1988) (prisoner ordinarily should proceed under § 3145). The Seventh
> Circuit was more definitive in an unpublished opinion, declaring, "[A] federal
> pretrial detainee cannot use § 2241 to preempt the judge presiding over the criminal
> case." *Williams v. Hackman*, 364 F. App'x 268, 268 (7th Cir. 2010). Unpublished
> opinions in this circuit have taken the same view. As we explained in one of those
> opinions:
>
>> To be eligible for habeas relief under § 2241, a federal pretrial detainee
>> generally must exhaust other available remedies. The reasons for this
>> requirement are rooted not in comity (as is the case with state prisoners),
>> but in concerns for judicial economy. Allowing federal prisoners to bring
>> claims in habeas proceedings that they have not yet, but still could, bring
>> in the trial court, would result in needless duplication of judicial work and
>> would encourage "judge shopping."

>    *Hall v. Pratt*, 97 F. App'x 246, 247–48 (10th Cir. 2004) (citations omitted*); accord
>    Chandler v. Pratt*, 96 F. App'x 661, 662 (10th Cir. 2004) ("To allow petitioner to
>    bring the same claims before another judge in a collateral proceeding would not
>    only waste judicial resources, but would encourage judge shopping."); *Thompson
>    v. Robinson*, 565 F. App'x 738, 739 (10th Cir. 2014); *Ray v. Denham*, 626 F. App'x
>    218, 219 (10th Cir. 2015).   Although the earlier cases did not speak in terms of
>    exhaustion of remedies in federal court, as we have in our unpublished decisions,
>    the term conveys the heart of the matter—that the prisoner is limited to proceeding
>    by motion to the trial court, followed by a possible appeal after judgment, before
>    resorting to habeas relief.   *See* 17B Charles Alan Wright & Arthur R. Miller,
>    *Federal Practice and Procedure* § 4261 (3d ed. 2007) ("The requirement of
>    exhaustion of remedies ordinarily will preclude the use of [§ 2241] before trial.").

*Medina*, 875 F.2d at 1028–29.

The *Medina* court did not end its analysis with the declaration that exhaustion is required.   The court continued:

>    But this is not to say that federal prisoners can pursue relief under § 2241 after these
>    avenues have been exhausted.   If a federal prisoner is ever entitled to relief under
>    § 2241 based on something that happened before trial, the circumstances are so rare
>    that they have apparently not yet arisen.

*Medina*, 875 F.3d at 1029.  Although such circumstances might exist for state detainees, *see, e.g., Ex parte Royall*, 117 U.S. 241 (1886); *Thomas v. Loney*, 134 U.S. 372 (1890); *Justices of Boston Mun. Ct. v. Lydon*, 466 U.S. 294 (1984), there do not appear to be any cases identifying the presence of such circumstances for federal pretrial detainees.

After *Medina*, the Third Circuit Court of Appeals addressed the claim of a pretrial detainee challenging his continued detention.  *Reese v. Warden Philadelphia FDC*, 904 F.3d 244 (3rd Cir. 2018).  The Third Circuit also concluded that "Section 2241 is . . . not the proper vehicle for Reese to challenge his detention pending trial.  The Bail Reform Act of 1984 . . . provides a comprehensive scheme governing pretrial-release decisions. . . . [F]ederal defendants who seek pretrial release should do so through the means authorized by the Bail Reform Act, not through a separate § 2241 action."  *Reese*, 904 F.3d at 247.  Additional circuit courts of appeals have since

4

echoed that conclusion.  *See Frederickson v. Terrill*, 957 F.3d 1379, 1380 (7th Cir. 2020); *Ramirez v. Warden*, No. 21-11397, 2021 WL 5353066, at *1 (11th Cir. Nov. 17, 2021).

The authorities cited in *Medina* and the additional circuit authority issued after *Medina* indicate, at a minimum, that Petitioner must exhaust his challenges in his criminal proceedings.  Petitioner has not so exhausted his claim.  Petitioner's failure to exhaust warrants dismissal of his petition without prejudice.

Petitioner's failure to exhaust, however, does not prevent the Court from addressing his claim on the merits.  *See, e.g., Kmet v. Sec'y of the Dep't of Homeland Sec.*, No. 1:20-cv-18, 2020 WL 7327573, at *2 (W.D. Mich. May 18, 2020), *R&R adopted*, 2020 WL 6536852 (W.D. Mich. Nov. 6, 2020)  ("Because exhaustion is not jurisdictional, 'a court may deny an unexhausted § 2241 petition on the merits rather than requiring further exhaustion.'").  The present petition is entirely without merit.  Petitioner's argument is based on two faulty premises: (1) that he was entitled to a hearing in South Carolina before he was transferred here; and (2) that denial of such a hearing has any impact on the proceedings in this Court.

Petitioner contends that the South Carolina extradition statute entitles him to a pre-transfer hearing.  The Supreme Court considered a similar question in *Cuyler v. Adams*, 449 U.S. 433 (1981).  The *Cuyler* Court considered whether a prisoner incarcerated in a jurisdiction that adopted the Uniform Criminal Extradition Act[1] (UCEA) is entitled to the procedural protections of that Act, including the right to a pretransfer hearing, before being transferred to another

---

[1] "The Uniform Criminal Extradition Act . . . has been adopted by 48 States, Puerto Rico, and the Virgin Islands. Initially drafted in 1926 and revised 10 years later, the Extradition Act, like the Detainer Agreement, establishes procedures for the interstate transfer of persons against whom criminal charges are outstanding." *Cuyler*, 449 U.S. at 435 n.1.  South Carolina has not adopted the UCEA, but the provisions of South Carolina's extradition statute, though they are significantly less detailed, generally parallel those of the UCEA. *Compare* the UCEA as adopted in Michigan, Mich. Comp. Laws § 780.1 *et seq*., and S.C. Code §§ 17-9-10 through 17-9-70.  The United States has not adopted the UCEA.

jurisdiction pursuant to the Interstate Agreement on Detainers[2] (IAD).  *Id*. at 435.  The Court concluded that the UCEA right to a pre-transfer hearing was preserved by and through the IAD. *Id*. at 449.

The decision in *Cuyler* does not afford Petitioner any ground for relief for several reasons.  First, the United States has not adopted and is not bound by the UCEA or the provisions regarding a pre-transfer hearing.  In *Martin v. Pittman*, 244 F. App'x 567 (5th Cir. 2007), the Fifth Circuit Court of Appeals explained:

> By its express terms, the UCEA—including the version adopted by Texas— applies only to transfers between the several states, e.g., Pennsylvania to New Jersey in *Cuyler*.  Unlike the IADA, the UCEA's definition of "State" does not include the federal government.  Thus, the UCEA facially has no application to transfers involving the federal government as either the sending State or the receiving State.  As the UCEA is not applicable to transfers involving the federal government, there are here no UCEA pre-transfer hearing rights to be incorporated by the IADA.  Martin thus had no right to a pre-transfer hearing.  As such, he has failed to raise a cognizable constitutional violation.

*Martin*, 244 F. App'x at 602 (footnote omitted); *see also Wilson v. Fenton*, 684 F.2d 249, 252 (3rd Cir. 1982) ("[T]he United States is not a party to the Uniform Criminal Extradition Act, so that whatever protections are accorded under that Act could not be applied to Wilson . . . .") (footnote omitted); *Mann v. Warden of Eglin Air Force Base*, 771 F.2d 1453, 1454 (11th Cir. 1985) ("Mann receives no protection under . . . the Extradition Act since the United States has not adopted [it].").[3]

---

[2] "The Interstate Agreement on Detainers . . . is a compact among 48 States, the District of Columbia, and the United States.  Initially drafted by the Council of State Governments in 1956 and included in the Council's Suggested State Legislation Program for 1957, the Agreement establishes procedures by which one jurisdiction may obtain temporary custody of a prisoner incarcerated in another jurisdiction for the purpose of bringing that prisoner to trial.  Unlike the Extradition Act, the Detainer Agreement establishes procedures under which a prisoner may initiate his transfer to the receiving State and procedures that ensure protection of the prisoner's speedy trial rights."  *Cuyler*, 449 U.S. at 435 n.1.  South Carolina and the United States have adopted the terms of the IAD.

[3] Petitioner's transfer to this district is likewise not limited by the Extradition Clause or the federal Extradition Act, 18 U.S.C. § 3182, because that clause and act are inapplicable to transfers of custody to or from the federal government.  *Kornegay v. Ebbert*, 502 F. App'x 131, 133–34 (3d Cir. 2012).

Second, even if the United States were included as a "state" under the UCEA, the UCEA has no application in South Carolina. *See, e.g., DuBose v. Evans*, No. 07-CV-13128, 2008 WL 2622951, at *4 n. 7 (E.D. Mich. Apr. 9, 2008) ("South Carolina is one of the two states that has not adopted the UCEA along with Mississippi.").

Third, the provisions of South Carolina's extradition act do not require a pre-transfer hearing. *Ray v. Simon*, No. 4:07-1143-TLW-TER, 2008 WL 5412067, at *13 (D.S.C. Dec. 24, 2008) ("While South Carolina has adopted the IAD Act, which as stated above does not require a transfer hearing, it has not adopted the UCEA. 13 S.C. Code Ann. §§ 17–9–10 through 70 sets out the extradition procedures applicable in South Carolina and a pre-transfer hearing is not required.") (footnote omitted).

Fourth, neither the provisions of the South Carolina extradition statute nor the IAD apply because Petitioner was not transferred pursuant to either act; he was transferred pursuant to a writ of habeas corpus *ad prosequendum*. When the United States obtains a state prisoner by means of a writ of habeas corpus *ad prosequendum*—and does not also file a detainer—the provisions of the IAD simply do not apply. *United States v. Mauro*, 436 U.S. 340 (1978). And as the First Circuit Court of Appeals explained in *United States v. Pleau*, 680 F.3d 1 (1st Cir. 2012), a federal writ of habeas corpus *ad prosequendum* takes precedence over state law:

> That "a state has never had authority to dishonor an *ad prosequendum* writ issued by a federal court" is patent. Under the Supremacy Clause, U.S. Const. art. VI, cl. 2, the habeas statute—like any other valid federal measure—overrides any contrary position or preference of the state, a principle regularly and famously reaffirmed in civil rights cases, *e.g., Cooper v. Aaron*, 358 U.S. 1, 18–19 (1958); *United States v. Barnett*, 376 U.S. 681 (1964), as in many other contexts, *e.g., Washington v. Wash. State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 695–96 (1979). State interposition to defeat federal authority vanished with the Civil War.

*Pleau*, 680 F.3d at 6.[4]  Thus, South Carolina's extradition statute could not limit the operation of the federal writ in Petitioner's case.

        Fifth, even if Petitioner's claim that he was entitled to, and denied, a pre-transfer hearing might, in certain circumstances not present here, give rise to civil liability, the lack of a pre-transfer hearing would not support habeas relief in the transferee jurisdiction.  In *Pettibone v. Nichols*, 203 U.S. 192 (1906), the Supreme Court rejected the idea that irregularities in the transfer from one jurisdiction to another could support a collateral attack on the proceedings in the transferee jurisdiction.  The Court explained:

> To the above citations we may add *Re Moore*, 75 Fed. 821, in which it appeared or was alleged that one accused of crime against the laws of a state, and in the custody of its authorities for trial, was brought back from another state as a fugitive from justice by means of an extradition warrant procured by false affidavits.  In his application to the circuit court of the United States for a writ of habeas corpus the petition stated facts and circumstances tending to show that he was not a fugitive from justice.  The application was dismissed.  After stating that the executive warrant issued by the surrendering state had performed its office, and that the petitioner was not held in virtue of it, the court said:  ["]His imprisonment is not illegal unless his extradition makes it so, and an illegal extradition is no greater violation of his rights of person than his forcible abduction.  If a forcible abduction from another state and conveyance within the jurisdiction of the court holding him is no objection to his detention and trial for the offense charged, as held in *Mahon v. Justice*, 127 U. S. 712, 32 L. ed. 287, 8 Sup. Ct. Rep. 1204, and in *Ker v. Illinois*, 119 U. S. 437, 30 L. ed. 421, 7 Sup. Ct. Rep. 225, no more is the objection allowed if the abduction has been accomplished under the forms of law.  The conclusion is the same in each case.  The act complained of does not relate to the restraint from which the petitioner seeks to be relieved, but to the means by which he was brought within the jurisdiction of the court under whose process he is held.  It is settled that a party is not excused from answering to the state whose laws he has violated because violence has been done him in bringing him within the state.  Moreover, if any injury was done in this case in issuing the requisition upon the state of Washington without grounds therefor, the injury was not to the petitioner, but to that state whose jurisdiction was imposed upon by what was done.  The United States do not recognize any right of asylum in the state where a party charged with a crime committed in another state is found, nor have they made any

---

[4] Indeed, the writ of habeas corpus *ad prosequendum* is not subject to any territorial limitation.  *See Carbo v. United States*, 364 U.S. 611 (1961).  The First Circuit Court of Appeals observed that apparently "no state has ever refused to honor the writ [such that] the Supreme Court has found it unnecessary to decide whether the Supremacy Clause requires the states' obedience."  *United States v. Kenaan*, 557 F.2d 912, 916 n.8 (1st Cir. 1977).

provision for the return of parties who, by violence and without lawful authority, have been abducted from a state, and, whatever effect may be given by a state court to the illegal mode in which a defendant is brought from another state, no right secured under the Constitution and laws of the United States is violated by his arrest and imprisonment for crimes committed in the state into which he is brought. *Mahon v. Justice*, 127 U. S. 715, 32 L. ed. 288, 8 Sup. Ct. Rep. 1204.["]

*Pettibone*, 203 U.S. at 213–14. Similarly, Petitioner's challenge relates to the means by which he was brought here; it does not relate to the propriety of his detention here.

That does not mean that Petitioner is wholly unprotected. His protection, however, is afforded by the requirements of due process in the jurisdiction to which he is transferred:

While we do not condone officials who fail to comply with extradition procedures, a fugitive's rights are sufficiently protected by those limitations placed on the demanding state by the Constitution when determining his guilt or innocence. And the Constitution "is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards." [*Johnson v.*] *Buie*, 312 F. Supp. [1349,] 1351 [(W.D. Mo. 1970)]. Allowing an additional layer of constitutional challenge affords the fugitive little benefit, while placing an unnecessary burden on the extradition process, something the Supreme Court has stressed must not be done.

*Barton v. Norrod*, 106 F.3d 1289, 1298–99 (6th Cir. 1997) (citing *In re Strauss*, 197 U.S. at 332–33, 25 S. Ct. at 537–38) (footnote omitted).

Thus, even if there were some flaw in Petitioner's transfer, the flaw would not give rise to a claim that is cognizable under § 2241 or in his criminal proceedings in this district.

## Conclusion

The Court will enter a judgment dismissing the petition with prejudice. In § 2241 cases, the Court need not address whether to grant a certificate of appealability. *Witham v. United States*, 355 F.3d 501 (6th Cir. 2004).

Dated:   December 6, 2021                     /s/ Hala Y. Jarbou
                                              HALA Y. JARBOU
                                              UNITED STATES DISTRICT JUDGE

9